UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JAMES MITCHELL                          CIVIL ACTION NO. 12-cv-1855

VERSUS                                  JUDGE HICKS

JERRY GOODWIN                           MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted James Harold Mitchell ("Petitioner") of manufacturing a Schedule II controlled dangerous substance (methamphetamine), and he was given a 45-year sentence after being adjudicated a third-felony offender.  His conviction was affirmed on direct appeal.  State v. Mitchell, 46 So.3d 224 (La. App. 2d Cir. 2010), writ denied, 62 So.3d 83 (La. 2011).  He also filed a post-conviction application in state court.  Petitioner now seeks federal habeas corpus relief on several grounds.  For the reasons that follow, it is recommended his petition be denied.

### Sufficiency of the Evidence

#### A.  Introduction

Petitioner challenges the sufficiency of the evidence to prove that he was guilty of the manufacture of methamphetamine in violation of La. R.S. 40:967(A)(1).  The statute provides that it is unlawful for any person knowingly or intentionally to produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture,

distribute, or dispense, a controlled dangerous substance classified in Schedule II. Methamphetamine is listed as a Schedule II drug. Manufacture is defined to mean the production, preparation, propagation, compounding, or processing of a controlled dangerous substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination. La. R.S. 40:961(24).

The evidence in this case included a small meth lab found in the trunk of a car parked outside the home where Petitioner was among the occupants. He states that there is no dispute that the State proved that the lab was built to manufacture methamphetamine, but he contends that there is not sufficient evidence to show that he was connected to the lab so that he could be convicted of manufacturing methamphetamine.

### B. The Evidence

Sgt. Michael Gray of the Caddo Parish Sheriff's Office testified that he gained information that Sommer Gass was involved in the manufacture of methamphetamine. After receiving this tip, he saw Ms. Gass in the passenger seat of a red Nissan Maxima that was parked at the Crossroads Grocery in Ida. There was a pit bull in the backseat, but Gray did not see the driver. He had, however, seen the car intermittently over the last couple of years and had seen Petitioner driving it. It was his understanding that Petitioner and Gass were a couple.

A few days later, Gray drove by a home in a rural area outside Ida and saw the red Maxima parked in front. Nearby was a large tank of anhydrous ammonia in an agricultural field. Gray knew that the chemical is often used to manufacture meth. He went by the

residence again the next day and saw a silver pickup truck with someone sitting in the passenger seat but no one in the driver's seat.  He noted the license number as he passed, made a radio check, and found that the plate was associated with a green truck.  He later attempted to make a traffic stop of the truck, which led to a high-speed chase that ended in a crash in Bossier Parish.  Gray saw in the truck scales often used for drug transactions and B-12, which is often used to cut meth.  He saw a baggie fly from the truck during the chase.  He later found a baggie in that area, but it did not have drugs in it.

After the chase ended, Gray called Sgt. Carl Townley, a supervisor of a narcotic unit, and reported what had happened.  Townley and other police officers went to the home, and Gray soon joined them.  Sgt. Townley testified that he knocked on the door, and Petitioner answered.  Townley advised him that police had information there were possibly drugs in the residence, and Petitioner became agitated.  Townley asked who was inside the home, and Petitioner "said his girlfriend, Sommer, was inside his house."  Petitioner then invited the officers into the living room area and said that his girlfriend was "in his bedroom on the south side."  She was called into the living room for officer safety, and Petitioner then asked the officers to step outside, which they did.

Townley testified that he told Petitioner he wanted to get consent to search the residence. Petitioner said that Townley could personally walk inside with him.  Townley did so, leaving the door open for officer safety, and walked through the house.  Gray said that he accompanied Townley and noted some items, but he did not touch anything.  Townley found on a dresser in the bedroom a piece of aluminum foil with a burn mark on it, which

indicated use to smoke meth.  In the living room, he found a cigarette pack on a coffee table that appeared to have meth residue in the bottom of it.  Crime lab testing later confirmed that it was.  Townley read Petitioner his Miranda rights.

Townley next searched the Maxima parked in the yard.  When he opened the door, there was a strong smell of ammonia, which is associated with drug manufacturing. Townley said that when he moved to the trunk of the car, Petitioner dropped his head in a defeated manner.  The trunk lock was missing, and it was held closed with only a piece of wire. Townley pulled the wire, and the trunk opened to reveal what the officers immediately recognized as a meth lab.  Townley found a credit card approval letter in Petitioner's name inside the car, and Petitioner's social security card was in the trunk with the meth lab. Townley testified that the lab was in operation, with pills having the ephedrine extracted from them, and a milky white substance that he recognized as part of the manufacturing process.

Sgt. Gray testified that they found in the bedroom closet a can of camping fuel, which is also used in the manufacturing process.  There was one other bedroom in the house, and it was padlocked.  Gray said it was his understanding that the room belonged to Jimmy "Tater" Bowles, who apparently was not present at that time.  Gray said the bedroom they searched, which he understood was Petitioner's and Sommer's, had men and women's clothing in it.  He did not, however, ask Petitioner directly whether he lived or stayed at that house.  Gray did testify: "I heard him say that that's where he lived with Sommer and he also

lived there with 'Tater' and that 'Tater's' bedroom was the one that had the padlock on it."
Gray said he never spoke to Tater about the items found in the Maxima.

Sgt. Gray recalled that Petitioner told Sgt. Townley "that he didn't care if he searched, but he said if there was any residue found in the residence that he was going to take the charge." Gray said he did not remember hearing Petitioner make any statement about the items found in the trunk of the car. When Townley was asked if Petitioner said anything about taking a charge, Townley said "that was after items were discovered, including the methamphetamine lab in the trunk of the vehicle that I found." Defense counsel quizzed Townley on cross-examination about whether the "take the charge" comment was made only with respect to possible residue found in the house, but Townley was insistent that Petitioner made the statement after the lab was discovered. Townley interpreted the statement to mean Petitioner was taking responsibility for the lab, but he said he never heard Petitioner actually confess that he was cooking methamphetamine.

## C. <u>Jackson</u>; Section 2254(D) Standard

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." <u>Cavazos v. Smith</u>, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

**D. Analysis**

Petitioner argues that the evidence is insufficient to prove him guilty of manufacturing methamphetamine. He notes the lack of evidence as to who owned or rented the house, the possibility that he was only visiting temporarily, and the presence of others in the house who might have been the person manufacturing drugs. He notes the lack of fingerprint evidence to tie him to the lab or any confession or direct evidence that he used the lab to manufacture drugs.

The state appellate court reviewed the facts at length and set forth the correct Jackson standard. It found the evidence sufficient to find that Petitioner was residing in the house that was suspected of drug activity, and evidence indicative of drug use and manufacture was found in the bedroom connected to Petitioner. The drug lab was found in a car that Sgt. Gray testified he had seen Petitioner driving, Petitioner's demeanor noticeably changed as Sgt.

Townley approached the trunk of the car, and Petitioner's social security card was found in the trunk with the lab.  There was also the less-than-consistent evidence about Petitioner conceding that he would take the charge, but the jury had before it Townley's more damaging testimony on that point that it was free to accept.

The state court found this evidence sufficient to uphold the jury's verdict under the deferential Jackson standard.  State v. Mitchell, 46 So.2d at 227-28.  When this court reviews that decision through the additional deference due the state court's decision under Section 2254(d), habeas relief is not permitted.  Petitioner has raised arguments that would make quite reasonable appeals to a jury assessing the evidence in the first instance, but the jury has made its decision, and the state appellate court and this court must afford it a great deal of respect and deference.  A jury could have interpreted the evidence in the fashion that Petitioner suggests, but his jury made a reasonable decision that the evidence instead proved that Petitioner was guilty as charged.  The state court's review of the jury's verdict was based on a reasonable assessment of the evidence and application of Jackson, so habeas relief is not permitted.

**Habeas Burden on Remaining Claims**

The sufficiency of the evidence claim was assessed under the Section 2254(d) standard that requires a showing that the state court's decision was contrary to or an unreasonable application of a clearly established Supreme Court holding.  That same

standard applies to Petitioner's other claims. A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Pape v. Thaler, 645 F.3rd 281, 287 (5th Cir. 2011). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

**Counsel of Choice**

Petitioner argued in his post-conviction application that he was denied the right to counsel of his own choosing when the trial court denied a motion to appoint new counsel and motion for continuance. Petitioner argues that his appointed counsel did not maintain close contact with him or adequately discuss the investigation and preparation of the case, which Petitioner argues prejudiced his defense. Petitioner's application was not specific as to what attorney attempted to enroll or when.

Judge Craig Marcotte responded to this argument by noting Petitioner was appointed counsel through the Public Defender Board.  He acknowledged Petitioner's claim that his family tried to hire an attorney but was denied that right, but he found that Petitioner did not meet his burden because: "There is no evidence in the Court record or the Application for Post-Conviction Relief that Petitioner ever requested for new counsel to enroll."  Tr. 552. The court also rejected the claim on the merits insofar as it was a claim of ineffective assistance of counsel.  Tr. 550-52.  The state appellate court issued a three-sentence writ denial that concluded the exercise of supervisory jurisdiction was not warranted on the showing made.  Tr. 651.  The Supreme Court of Louisiana denied writs without comment. Tr. 757.

Petitioner repeated in his federal petition that he was denied his right to counsel of choice when he properly filed a motion to enroll new counsel and asked for a continuance. Again, Petitioner did not provide any specific information about these alleged events.  The undersigned was nonetheless able to find after reviewing the record that Petitioner did file a motion to enroll and motion for continuance on February 11, 2009, when the trial was set to begin that afternoon.  The motion was filed by attorney Joey W. Hendrix, who conceded that court was scheduled to commence in the case that very day at 1:30 p.m., but he was "just now hired to represent this client and has to leave for DeSoto district court on this date and time."  He asked that he be enrolled and that the court date be continued.  Tr. 100.  Petitioner states that oral argument was held on the matter, but he has not presented a transcript.  A written order denied the motion "insofar as continuance is concerned," but stated that

Hendrix could enroll as co-counsel. Tr. 101.  The minutes show that the case was continued that afternoon, but the trial began the next morning.

An element of the Sixth Amendment right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006).  A defendant has the "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 109 S.Ct. 2646, 2652 (1989).  If the right is wrongly denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Gonzalez-Lopez, 126 S. Ct. at 2564-65.

But the right is not absolute.  Gonzalez-Lopez  stated that nothing in its decision "casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice.... We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 2565-66.

The Fifth Circuit applied these principles in  U.S. v. Jones, 733 F.3rd 574 (5th Cir. 2013) and affirmed the denial of a motion to substitute that came 13 days before trial and would have required a continuance of a complicated trial and might have compromised the availability of a key witness. See also U.S. v Contreras, 558 Fed. Appx. 400 (5th Cir. 2014)

(district judge did not abuse discretion in denying late request to change counsel) and U.S.

v. Villalobos, 2014 WL 4402829 (W.D. Tex. 2014) (late motion to change counsel denied

when it would require continuance and inconvenience witnesses who had traveled to testify).

Petitioner did not articulate the specific facts underlying this post-conviction claim,

so the state court denied it for failure to meet his burden.  The claim might have been

addressed more directly had Petitioner taken the time to present the trial court with the

particular facts about his attempt to enroll attorney Hendrix on the eve of trial. In any event,

the trial judge was well within his discretion to deny the eleventh-hour attempt to enroll

counsel and continue the trial.  Petitioner has not pointed to any facts that would make the

decision unreasonable under the circumstances.  He complains, generally, about his

appointed counsel's not filing various motions or offering certain defense strategies, but

success on this claim is not dependent on a prejudice inquiry.  Petitioner has not met his

burden of overturning the state court's rejection of this claim.


**Illegal Search and Seizure**

Petitioner contends that the actual facts are that he and his girlfriend went to visit the

residence of a friend (unnamed) at the house at issue, and Petitioner was driving a red

Chevrolet Suburban registered in his name.  Shortly after they arrived, the friend decided to

go to the store, and he left Petitioner and his girlfriend at the residence.  It was while the

friend was gone that police showed up and asked permission to search.  Petitioner said he

gave consent, unaware that he could not legally do so and unaware of any illegal items in the

home. When Townley found the drug residue, Petitioner said that he "naturally" agreed to take the charge to protect his girlfriend. He argues that all evidence found at the house and in the car should have been suppressed pursuant to the Fourth Amendment because "Petitioner was nothing more than a visitor at the residence on that day" and could not legally give Townley permission to search anything other than the Suburban, which he says was searched and found to be clean.

The trial court denied this claim on post-conviction, reasoning that it should have been asserted on appeal and was outside the scope of the post-conviction statute. The appellate court summarily denied relief without citing any procedural grounds. The State argues that the claim is subject to a procedural bar, but the defense is of doubtful merit given the lack of a express reliance on a procedural ground in the last reasoned state court opinion. This court need not address the procedural bar because a federal habeas court is generally barred from reviewing Fourth Amendment claims. Stone v. Powell, 96 S.Ct. 3037 (1976). In Stone, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 96 S.Ct. at 3037. To satisfy the "opportunity for full and fair litigation" requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim. Stone bars federal habeas consideration of that claim whether or not the defendant employs those available processes. Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).

Louisiana provided Petitioner the opportunity to file a motion to suppress and test the facts and law that he asserts should have resulted in suppression.  He did not take advantage of that opportunity, and it is now too late for him to attempt to litigate what should have been a pretrial matter in federal post-conviction proceedings.  Furthermore, the version of the facts advocated by Petitioner deprive him of standing to assert a Fourth Amendment claim regarding the search of the home or car.  A mere invited visitor does not have standing to challenge a police search of a home.  Minnesota v. Carter, 119 S.Ct. 469 (1998); U.S. v. Majors, 328 F.3d 791, 795 (5th Cir. 2003); and U.S. v. Rios-Davila, 530 Fed. Appx. 344, 347 (5th Cir. 2013).  Petitioner would also lack standing to challenge the search of the Maxima if he had no property or possessory interest in it.  Rakas v. Illinois, 99 S.Ct. 421 (1978).

**Hearsay Testimony**

Petitioner argues that Sgt. Gray gave hearsay testimony regarding things Gray overheard during the investigation conducted by the narcotics agents at the house. Petitioner does not specify what testimony was allegedly objectionable.  He merely objects that Gray should have been limited to testimony regarding what he saw and did, and the other officers should have been required to testify as to any conversations they had with Petitioner. Petitioner does cite to Tr. 51-54, which is where defense counsel objected during the "free and voluntary" hearing that it was hearsay for Gray to testify about what he overheard Petitioner tell Sgt. Townley.  Counsel agreed that Townley could give such testimony but,

for some reason, he believed it to be hearsay for Gray to testify as to what Gray heard

Petitioner tell Townley.  When the jury returned, the prosecutor asked Gray what statements

he heard Petitioner make.  Defense counsel raised a hearsay objection, and it was overruled.

Gray then testified that Petitioner told Townley that he could search and Petitioner would

take the charge for any residue.  Tr. 54-55.

The hearsay objection was meritless.  A statement by a party is plainly admissible so

long as it was made voluntarily.  L.C.E. 801(d)(2)(a); U.S. v. Meyer, 733 F.2d 362, 363 (5th

Cir. 1984) ("Any and all statements of an accused person not excluded by the doctrine of

confessions or the privilege against self-incrimination may be used against him as an

admission and are not hearsay.").  It was irrelevant to whom Petitioner addressed his remarks

if Gray heard them.  Plaintiff did not have a valid hearsay objection to testimony about his

own statements, so the state court acted reasonably in rejecting this claim.

Petitioner also argues that Gray testified that he was watching the suspect house based

on a tip, but Petitioner was not allowed to cross-examine any tipster regarding Petitioner's

relationship to the residence.  He complains that this violated the Confrontation Clause.  Both

Louisiana and federal law allow a law enforcement officer to testify generally about

information provided by another person without it constituting hearsay if it is offered, not for

the truth of the information, but to explain the course of the police investigation and the steps

leading to arrest.  State v. Addison, 920 So.2d 884, 892 (La. App. 5th Cir. 2005); Woodfox

v. Cain, 609 F.3d 774, 814 (5th Cir. 2010); U.S. v. Brown, 560 F.3d 754, 764 (8th Cir. 2009);

and U.S. v. Moten, ____ Fed. Appx. ___, 2015 WL 2179797 (3d Cir. 2015).

Gray said only that he was paying attention to the house and cars associated with it because he was trying to "corroborate some information that there was some illegal drug activity going on there." Tr. 183. He also said that he had received some information that Sommer Gass was involved in the manufacture of methamphetamine. Tr. 183-84. He did not offer any explanation that included a direct assertion of criminal activity against Petitioner or otherwise cross the line regarding this evidentiary rule.

Furthermore, Confrontation Clause violations are subject to a harmless error analysis that allows habeas relief on account of constitutional error in a state court criminal trial only if the error had a substantial and injurious effect or influence in determining the jury's verdict. Fratta v. Quarterman, 536 F.3d 485, 507-08 (5th Cir. 2008). The brief comment by Sgt. Gray to explain his reason for keeping an eye on the house and Ms. Sommers was relatively insignificant in the face of the evidence of a meth lab with Petitioner's social security card near it, and the other evidence of guilt. To the extent his explanation could be deemed a violation, the error was harmless.

**Fingerprint Comparison**

The State billed Petitioner as a third-felony multiple offender, which would subject him to an enhanced sentence for his manufacturing conviction. The multiple offender statute, La. R.S. 15:529.1, requires the State to prove that the accused is the same person who was convicted of prior felonies that otherwise satisfy the statute. "Proof of identity can be established through a number of ways, including expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding." State v. Lomax, 81 So.3d

788, 791 (La. App. 4th Cir. 2011). <u>See also State v. Payton</u>, 810 So.2d 1127 (La. 2002) (discussing acceptable forms of proof).

The State used fingerprint testimony to match Petitioner to his prior convictions for aggravated flight from an officer and attempted creation and operation of a clandestine laboratory. Petitioner argues that a proper fingerprint comparison was not conducted.

Deputy Gary Baird testified that he was trained in fingerprint analysis and comparisons and had performed in excess of 1,000 comparisons during his 14-year career. The court accepted him, without objection from the defense, as an expert in fingerprint comparisons and analysis. Baird explained that he took inked impressions from Petitioner 15 or 20 minutes earlier, and he compared them to fingerprint cards that were attached to the bills of information filed in connection with the prior felonies. With respect to the first bill, he testified that the impression of the right index finger taken from Petitioner matched the corresponding print on the bill. He linked the right thumb prints with respect to the second bill. Baird said there was no doubt in his mind that the prints were made by the same person.

Petitioner argues that Baird did not have sufficient time to conduct a thorough analysis and did not give testimony regarding any special education he possessed or his use of a 12-point system or other method to compare the prints. Defense counsel did ask Baird what method he used, and Baird explained that he compared the right ring finger (he said index finger on direct) on the first bill because it presented the best quality and quantity of ridged detail for comparison. The pattern was a right slope loop on both prints, and an examination for level two detail found no less than 20 major ridge events. Baird said he followed the

same process for the second bill, where the right thumb presented the best quality and quantity of ridge detail.  He found no less than 10 major ridge events with respect to it. There was no argument from the defense that Petitioner was not the same James Harold Mitchell charged in those prior crimes and whose fingerprints were found to match the prints taken in those cases.  The trial judge stated that he found "beyond a reasonable doubt that James Mitchell is a third-felony habitual offender."  Tr. 360-70.

The multiple offender statute, in La. R.S. 14:529.1(D)(1)(b), states that "the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact."  The constitutional sufficiency of the evidence standard of <u>Jackson v. Virginia</u>, 99 S.Ct. 2781 (1979), most often applied to test convictions, asks whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  The <u>Jackson</u> standard has been applied in at least some habeas challenges to the sufficiency of the evidence in a multiple offender hearing.  <u>Warfield v. Warden</u>, 2012 WL 3067604 (W.D. La. 2012); <u>French v. Estelle</u>, 692 F.2d 1021 (5th Cir. 1982).

But the Fifth Circuit has also said that the accused at sentencing does not enjoy the full panoply of due process protections that apply at trial.  Even if the sentencing proceeding may involve the determination of particular facts given specific sentencing significance under the law, there is no due process requirement that they be established beyond a reasonable doubt or even by clear and convincing evidence.  <u>Buckley v. Butler</u>, 825 F.2d 895 (5th Cir. 1987).  <u>See</u> <u>also</u> <u>Barajas v. Falk</u>, 2015 WL 4575142, *8 (D. Colo. 2015) ("There is no indication that the Supreme Court of the United States has made a holding or pronouncement

Page 17 of  19

that has clearly established the proof necessary to convict a defendant as an habitual offender.")

Even if the Jackson standard applies to this habeas review, the State met its burden. There was unchallenged expert testimony linking Petitioner to the prior felonies, and there is no indication that the name, date of birth, and other identifying information in connection with those crimes do not match Petitioner. The state court's rejection of this claim was not an objectively unreasonable application of Jackson or any other clearly established Supreme Court holding.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of August, 2015.

Mark L. Hornsby
U.S. Magistrate Judge